**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TRAVELERS INDEMNITY COMPANY,**

  Plaintiff,

v.

**WILLIAM GOSLINE d/b/a BILL'S DUSTBUSTER JANITORIAL SERVICE,**

  Defendant and Third-Party Plaintiff,

v.

**"KENNY DOE," an employee of NORTHWAY PLAZA ASSOCIATES, LLC or KELLY AND DUTCH REAL ESTATE, INC., NORTHWAY PLAZA ASSOCIATES LLOC, KELLY AND DUTCH REAL ESTATE INC., MARCUS NOBLE, INC., PITCHER NOBLE, INC., PITCHER NOBLE, INC., d/b/a NOBLE TRUE VALUE, KEN NOBLE, KEN NOBLE d/b/a NOBLE TRUE VALUE, NOBLE TRUE VALUE, L.R. NELSON CORPORATION,**

  Third-Party Defendants.

5:01-CV-794
(NAM/RFT)

---

**APPEARANCES:**

Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
Counsel for Plaintiff

Carter, Conboy, Case, Blackmore,
Maloney & Laird, P.C.
20 Corporate Woods Boulevard
Albany, New York 12211
Counsel for Defendants

**OF COUNSEL:**

David J. Groth, Esq.

Terence S. Hannigan, Esq.

Hon. Norman A. Mordue, D.J.:

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Travelers Indemnity Company moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for reconsideration of the Court's entry of a directed verdict for defendant Noble True Value. Defendant opposes plaintiff's motion.

## II. BACKGROUND

This diversity action stems from a water leakage incident that occurred at plaintiff's facility in the Northway Plaza Shopping Center building in Queensbury, New York. During the overnight hours of October 12 and 13, 1999, water escaped from a plastic "Y" faucet attachment in a janitorial closet located above a room containing plaintiff's telephone communication equipment.

Mary Gosline, a representative of Bill's Dustbuster Janitorial Service, the company that provided janitorial services to the plaza where Travelers Indemnity leased space, testified that when she went to survey the damage, she noticed that the plastic Y attachment she had purchased from Noble True Value hardware store and installed on a faucet in the janitorial closet five months earlier, was broken. Plaintiff asserted negligence and strict products liability claims based on defendant's failure to provide adequate warnings with the Y attachment.

According to the evidence at trial, L.R. Nelson Corp., the manufacturer of the Y attachment, packaged and sold the plastic Y attachment in two different ways: in a blister pack containing warnings which stated that the Y attachment was intended for outdoor watering use only and was not to be used with water exceeding 100 degrees Fahrenheit or with pressure exceeding 60 pounds per square inch ("psi"); and in a clear plastic bag that did not contain any warnings.

Travelers Indemnity claimed that Noble True Value knew that the Y attachment was

sold in two types of packaging and had in the past sold the product both ways. Travelers Indemnity asserted that Noble True Value also knew that the Y attachment was made to be used outdoors, but decided to purchase the Y attachments in the clear plastic bag without the warning. Ms. Gosline testified that the Y attachment she bought from Noble True Value came in a clear plastic bag, and that it did not come with any warnings. Ms. Gosline further testified that if there had been a warning with the Y attachment indicating that it was for outdoor use and was not to be used with water exceeding 100 degrees Fahrenheit or with pressure exceeding 60 psi, she would not have purchased it. Plaintiff presented no competent evidence regarding the temperature or the pressure of the water used with the Y attachment at issue in this case or evidence which would explain why the Y attachment broke.

At trial, after both parties rested, Noble True Value moved pursuant to Rule 50 for a directed verdict. The Court, after carefully reviewing the evidence presented at trial, found that plaintiff had failed to present any evidence showing that defendant's failure to warn Ms. Gosline that the Y attachment was intended for outdoor use and was not to be used with water exceeding 100 degrees Fahrenheit or with pressure exceeding 60 psi proximately caused plaintiff's damages. Plaintiff relied solely on Ms. Gosline's testimony that when she arrived to survey the damage to plaintiff's facility she saw that the Y attachment in the janitorial closet was broken. Indeed, plaintiff presented no evidence indicating why the Y attachment broke. Thus, the Court concluded that any determination by the jury as to the reason the Y attachment broke and ultimately whether defendant's failure to warn proximately caused water damage to plaintiff's facility, would be based upon sheer speculation. Accordingly, the Court granted defendant's motion for a directed verdict and dismissed the case.

**III.   DISCUSSION**

### A. Standard for Rule 59(e) Motion for Reconsideration

As the Second Circuit has explained, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); *see also Agritronics Corp. v. National Dairy Herd Ass'n, Inc.*, No. 94-CV-0066, 1994 WL 542203, at *1 (N.D.N.Y. Sep. 22, 1994).

In this case, there have been no intervening changes in the controlling law, and there is no new evidence. Therefore, plaintiff must identify a clear error of law or manifest injustice in the Court's issuance of a directed verdict for defendant.

### B. Standard for a Directed Verdict or Judgment as a Matter of Law

Pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

In this case, after carefully reviewing the evidence presented at trial, the Court issued the following decision:

> Upon review of the evidence presented during the trial of this case, the Court finds that there is a lack of proof on the issue of proximate cause. Plaintiff has presented no evidence that the lack of warnings led to the alleged failure of the Y attachment, the water leakage incident, and the damages referenced in the complaint. There is no proof in this trial from which a jury could find that the alleged lack of warnings was the proximate cause of the damages in this case. [*See Johnson v. Johnson Chemical Co., Inc.*, 588 N.Y.S.2d 607 (2d Dep't 1992)]. Indeed, there's no competent proof as to why the Y attachment actually broke. Additionally, even though assuming that Mrs. Gosline would not have purchase the particular Y

attachment if she had seen the warnings, that does not satisfy the requirement of proof of causation.  Therefore the case cannot go forward.  The defendant Noble True Value's motion for a directed verdict is granted at this time and the complaint is dismissed.

In its motion, plaintiff claims that: (1) that there was sufficient factual evidence admitted during trial from which the jury could have inferred, (a) that the reasonably foreseeable misuse of the Y attachment in the absence of warnings proximately caused plaintiff's injuries, and (b) the reason for the Y attachment's failure; and (2) the Court imposed a higher burden on plaintiff than is required under the law by requiring it to show why the Y attachment broke.  Thus, plaintiff claims the Court should reconsider its decision and vacate its directed verdict and judgment for defendant.

### C. Failure to Warn - Proximate Cause

Under New York law, to establish a failure to warn claim under negligence and strict products liability theories, the plaintiff must show that the warning was inadequate and that the failure to adequately warn of the dangers was a proximate cause of the plaintiff's injuries. *Figueroa v. Boston Scientific Corp.*, 254 F.Supp.2d 361, 369-70 (S.D.N.Y. 2003).  "To constitute proximate cause, an inadequate warning must be a substantial cause of the events leading to the injury.  An act cannot be the 'substantial cause' if the injury would have occurred regardless of the content of defendant's warnings."  *Figueroa*, 254 F.Supp.2d at 370.  "Even when an injury results from a misuse of a product, proximate cause may exist.  If a particular way of misusing a product is reasonably foreseeable, then a manufacturer's failure to warn of potential dangers from that misuse may be the proximate cause of a subsequent injury." *Erony v. Alza Corp.*, 913 F.Supp. 195, 200 (S.D.N.Y. 1995).

In this case, the packaging that plaintiff claims should have accompanied the Y

attachment stated that the product was intended for outdoor watering use only, and instructed that it should not be used "with water exceeding 100 degrees Farenheit, which is 38 degrees Celsius, or with pressure exceeding 60 psi."  At trial, there was evidence from an L.R. Nelson representative that the Y attachment should not be used with water exceeding100 degrees Farenheit because the seals might soften, or with pressure exceeding 60 psi, because it was not designed to handle high water pressure.  There was also evidence that the Y attachment was hooked up to an indoor faucet above plaintiff's facilities, that plaintiff's facilities were damaged as a result of an overnight water leak, and that the next morning, Ms. Gosline discovered the Y attachment was cracked.  Ms. Gosline testified that there was a hot water heater next to the faucet and that janitorial workers used a combination of hot and cold water.

      Plaintiff relied on the testimony of defendant's representative, Christopher St. Andrews, who stated that the typical hot water heater he sells in his hardware store ranges in temperature settings from 125 degrees to 150 degrees.  Plaintiff, however, did not qualify Mr. St. Andrews as an expert.  More importantly, Mr. St. Andrews offered no testimony as to whether the hot water heater in plaintiff's facility was "typical", whether he had any personal knowledge regarding the hot water heater in plaintiff's facility, or whether he knew what the water temperature was in plaintiff's facility.  Plaintiff also relied on Mr. St. Andrews' testimony that the "typical" water pressure in the Queesbury area in 1999 was between 60-100 psi.  Again, plaintiff did not qualify Mr. St. Andrews as an expert, offered no basis for his testimony regarding the water psi in the "Queensbury area", and adduced no evidence whatsoever regarding the psi in plaintiff's facilities.  Thus, although there was evidence from an L.R. Nelson representative that the Y attachment should not be used with water exceeding100 degrees Farenheit because the seals might soften, or with pressure exceeding 60 psi, because it was not

designed to handle high water pressure, there was no basis for the jury to infer that the Y attachment was used under either condition, and that it broke as a result.

The only misuse plaintiff identified at trial was that the Y attachment was used indoors instead of outdoors. Plaintiff also adduced evidence that Ms. Gosline would not have bought the Y attachment in the first instance had it contained a warning label regarding outdoor use, water temperature, and water psi, that there was water damage, and that Ms. Gosline noticed that the Y attachment was broken. Neither party, however, introduced any evidence showing why the Y attachment broke. Consequently, while there was evidence that Ms. Gosline misused the Y attachment to the extent she used it indoors, there was no evidence that defendant's failure to warn of the potential dangers from that misuse, namely, that the seal would break if used with water in excess of 100 degrees Fahrenheit and that the Y attachment was not made to be used with water pressure in excess of 60 psi, was the proximate cause of a subsequent injury. See Erony, 913 F.Supp. at 200. Thus, the evidence presented at trial was insufficient to raise an issue as to proximate cause.

Plaintiff claims that by requiring it to show why the Y attachment broke, the Court is holding it to a higher burden of proof than the law requires. Plaintiff notes the Court ruled without the benefit of written memoranda from the parties regarding the issue of proximate cause, and thus may not have considered certain relevant case law. Having reviewed the case law plaintiff cites, the Court notes that in every case there was some evidence of what - as a factual matter - caused the damages and that there was some evidence that the damages were caused by the particular dangers of the use or foreseeable misuse of the product, and of which the defendant allegedly failed to warn against. *See e.g. Alfieri v. Cabot Corp., et al.*, 17 A.D.2d 455 (1st Dep't 1962) (the plaintiff died of carbon monoxide poisoning after burning charcoal

7

briquets indoors which did not include a warning on the label that if the charcoal briquets were burned indoors without adequate ventilation a high concentration of carbon monoxide would result); *Johnson et al. v. Johnson Chemical Co., Inc., et al.*, 183 A.D.2d 64, 69 (2d Dep't 1992) (although can of roach spray warned that all flames and pilot lights should be put out prior to use, and the plaintiff did not put out pilot light on stove prior to use, liability could still be imposed based upon the defendant manufacturer's failure to "warn of the hazards which may follow from the use of a product in some abnormal way" where the plaintiff's activation of at least one can near stove pilot light caused explosion and started a fire in the kitchen and there was evidence that "the basic cause of the fire was 'misuse of a flammable material.'"); *Erony*, 913 F.Supp. at 201 (child died after ingesting used Duragesic pain relief patches which contained labels that warned against handling by children, but did not warn that ingestion could cause serious injury).  Here, in contrast, there was no showing that the damage caused was as a result of the particular hazards of indoor use of the Y attachment, which plaintiff claimed were use of water that was too hot, causing the seal to break and water to leak, and use of the Y attachment with water with pressure that was too high for it to withstand.  Consequently, there was no basis for the jury to conclude that plaintiff's damages resulted from the foreseeable misuse of the Y attachment indoors.  In the absence of evidence of any reason why the Y attachment broke, it is almost inconsequential that a warning against indoor use would have prevented her from buying that particular Y attachment in the first instance as the Y attachment could have broken for any number of reasons utterly unrelated to indoor use, water temperature, or psi.  Thus, the Court finds there was no clear error of law or manifest injustice in its prior ruling and that even if it were to reconsider its issuance of the directed verdict, the Court would not alter its prior ruling in any respect.  Accordingly, plaintiff's motion is denied.

IV.     CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for reconsideration and vacation of judgment or order is DENIED.

IT IS SO ORDERED.

Dated:  May 18, 2005
        Syracuse, New York

*Norman A. Mordue* (signature)
Norman A. Mordue
U.S. District Judge